**BUTLER TOWNSHIP AREA WATER AND SEWER AUTHORITY, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 1995.
Decided Aug. 2, 1995.
Reargument Denied Oct. 2, 1995.

Leo M. Stepananian, for petitioner.

Matthew Wolford, Assistant Counsel, for respondent.

Before COLINS, President Judge, KELLEY, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This is a petition for review of an order of the Environmental Hearing Board (EHB) which dismissed, in part, the challenge of Butler Township Area Water and Sewer Authority (Authority) to a Department of Environmental Resources (DER) condition (Condition 3)[1] imposed on the Authority in the granting of a subsidiary[2] water allocation permit.

The November 4, 1994 order of the EHB dismissed the Authority's appeal as to DER's requiring that the Authority install meters to monitor the flow of water coming into the Authority's lines. Said order sustained the Authority's appeal insofar as the condition required the Authority to install meters to monitor the flow of water traveling from the Authority's lines to the supplier, Pennsylvania American Water Company (PAWC). Thus, the order upheld the condition as to the requirement that the Authority install meters on the incoming water supply lines of its system but found unreasonable the requirement that the Authority install meters

on the water supply lines as they exit the Authority's system.

The factual and procedural history of this proceeding is as follows. The Authority was formed in 1970 to provide water and sewer service to certain parts of Butler Township.[3] The Authority provides water service to approximately 1,895 customers. R.R. 50a. The Authority owns the lines, hydrants, water tanks, and all other water facilities. R.R. 68a. The Authority buys its water in bulk from PAWC and supplies the water to its customers through its own lines. R.R. 69a. The Authority has no independent water source other than PAWC. *Id.* The Authority obtains its water through nine interconnections between PAWC's water lines and the Authority's water lines. PAWC obtains water to supply to Butler from various reservoirs and creeks, and indirectly from the Allegheny River. Id. Because these waters are surface waters, PAWC may withdraw water only as authorized by DER.

In December 1991, the Authority filed an application for a water allocation permit. On February 1, 1993, DER issued Water Allocation Permit No. WA–904 to the Authority. As part of the permit, the Authority was required to submit a drought contingency plan, and Condition 3 was imposed, *inter alia.* The purpose of Condition 3 was to measure the amount of water loss in the Authority's system and to measure the daily usage by the Authority's customers. DER considers a water loss of less than 20% to be acceptable.

The Authority challenged DER's imposition of Condition 3 and appealed to the EHB on March 1, 1993. DER subsequently modi-

---

1. Condition 3, at R.R. 139a, provides as follows: The permittee shall install accurate measuring and recording instruments or devices to determine the amount of water purchased from Pennsylvania–American Water Company, Western Division–Butler System. The design and layout of said measuring devices shall be submitted to and be approved by the Department of Environmental Resources' Division of Water Planning and Allocations before installation. Records of daily flow readings shall be submitted to the State Water Plan Division monthly, and the original field records shall be available at all times for inspection by representatives of the Department.

The purpose of Condition 3 was to measure the amount of water loss in the Authority's system and the daily usage of water by the Authority's customers.

2. This permit is referred to as a "subsidiary" water allocation permit because the water is purchased from another water supplier rather than being directly withdrawn from a surface water source.

3. The Authority subsequently transferred its sewer lines and sewer facilities to the Butler Area Sewer Authority.

fied the permit without substantively changing Condition 3.[4] The Authority appealed the order issuing the modified permit. By order dated May 23, 1993, both appeals were consolidated by the EHB.

Prior to the hearing before the EHB, the parties submitted a Joint Stipulation pursuant to a pre-hearing order. Therein, the parties presented three (3) distinct issues.[5] The parties resolved two of the issues prior to the hearing. Thus, the parties stipulated that the only issue remaining to be resolved by the EHB at the time of the hearing was the propriety of DER's requirement that the Authority install interconnection meters on its water supply lines. The hearing before the EHB was held September 1–2, 1993.

■ Our scope of review relative to this appeal is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Lucky Strike Coal Co. v. Department of Environmental Resources,* 119 Pa.Commonwealth Ct. 440, 547 A.2d 447 (1988), *petition for allowance of appeal denied,* 521 Pa. 607, 555 A.2d 117 (1988). The Authority seeks review on all three areas within our standard of review, raising six various issues.[6]

■ As to these six issues, we initially note the fundamental principle that where an issue is cognizable in a given proceeding and is not raised, it is waived and will not be considered on review of that proceeding. *Siano v. Workmen's Compensation Appeal Board (Dileo's Restaurant, Inc.),* 137 Pa. Commonwealth Ct. 487, 586 A.2d 1008 (1991). The rationale underlying the waiver doctrine has been specifically applied to administrative proceedings. *Keystone Health Plan West v. Department of Health,* 147 Pa.Commonwealth Ct. 686, 609 A.2d 612 (1992). Herein, our review of the record indicates that from the various issues presented by the Authority at various parts of prior proceedings, the only issues properly preserved for review by this court relate to 1) jurisdiction

4. A typographical error on the Authority's water allocation permit omitted most of the last sentence of permit Condition 3, beginning with the words "The required". The error was discovered on the first day of the hearing on the merits, and DER agreed that the permit would be treated as if the last sentence were omitted entirely. N.T. 359–362.

5. These issues were: 1) Whether DER acted unreasonably, arbitrarily or capriciously, or beyond its legal authority, in determining the amount of water to be allocated to the Authority; 2) whether the Authority complied with the drought contingency plan permit requirement; and 3) whether DER acted unreasonably, arbitrarily or capriciously by requiring the Authority to install interconnection meters on its water supply lines. R.R. 71a.

6. Specifically, the Authority argues 1) the EHB committed an error of law by holding that DER has the power and authority to condition the use of subsidiary water permits under the Water Rights Act where the Act provides for conditions only where there is a conflict between applications for water permits; 2) the EHB committed an error of law by holding that DER's imposition of a standard condition in a water allocation permit was not an abuse of discretion nor beyond DER's legal authority where the standard condition is an unpromulgated and unpublished regulation; 3) the EHB committed an error of law by holding that the Authority did not raise the issue of the unpromulgated and unpublished

regulation in the Authority's notice of appeal and in violation of 25 Pa.Code § 21.51(e) where the Authority raised the issue generally in the joint stipulation between the Authority and DER, and where the Authority specifically and promptly raised the same immediately after it discovered that the regulation upon which DER relied to impose said condition was unpromulgated and unpublished, said discovery not occurring until the hearing itself; 4) the EHB denied the Authority due process by ruling at the hearing, in conformity with 25 Pa.Code § 21.51(e), that the Authority could raise the issue involving the unpromulgated and unpublished regulation in the Authority's post-hearing brief but then ruled in the adjudication that because the Authority had failed to raise the issue in its notice of appeal, EHB would not consider the issue; 5) the EHB disregarded substantial evidence which proved that it was arbitrary and capricious for DER to require the Authority to install costly water meters to measure water loss from the Authority's water system where the Authority uses the same method and formula used by DER to calculate water loss and DER admitted the Authority's water loss was less than 50% of that deemed acceptable by DER; and 6) the EHB committed an error of law by holding that it has jurisdiction to hear and decide whether DER may impose service conditions in a water allocation permit contrary to the Municipality Authorities Act, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §§ 301–401, which grants courts of common pleas the exclusive jurisdiction to determine all questions of service by a municipal authority.

of the EHB and 2) the imposition of Condition 3 requiring that the Authority install interconnection meters on incoming water supply lines of its system.[7]

Regarding the issue of jurisdiction, the Authority raised a challenge to the jurisdiction of the EHB at the September 1993 hearing in this matter. The Authority argued that DER lacked the legal authority to issue a subsidiary water allocation permit under what is commonly called the Water Rights Act.[8] This court has previously ruled to the contrary on this very issue. *See Department of Environmental Resources v. Philadelphia Suburban Water Co.,* 135 Pa.Commonwealth Ct. 283, 581 A.2d 984 (1990), *petition for allowance of appeal denied,* 527 Pa. 657, 593 A.2d 427 (1991).[9]

■ The Authority subsequently raised a different reason for lack of jurisdiction by the EHB. In its proposed Findings of Fact and Conclusions of Law, the Authority asserted lack of subject matter and in personam jurisdiction [10] by virtue of an exclusive jurisdiction provision in the Municipality Authorities Act (MAA).[11] The Authority asserts an alleged conflict between the Water Rights Act and the MAA by asserting that Section 4 B(h) of the MAA, 53 P.S. § 306 B(h) [12], vests exclusive jurisdiction in the court of common pleas to decide issues involving the reasonableness of "rates" or "services" of municipal authorities.

While we agree with this assertion, we point out that a fundamental distinction exists between issues of "water rights" and questions concerning "rates" or "service". "Water rights" are defined as "the right to take or divert water from any rivers, streams, natural lakes and ponds, or other surface waters...." in Section 1(d) of the Water Rights Act. 32 P.S. § 631(d). Questions involving "rates" concern the amount of money charged to provide a particular service. *See Duryea Borough Sewer Authority v. McLaughlin,* 74 Pa.Commonwealth Ct. 517, 460 A.2d 402 (1983). Questions involving "service", such as "the adequacy, safety and reasonableness" of the service, concern matters of the size of a distribution area and whether and/or how a particular service is to be provided. *See Municipal Water & Sewer Authority v. Northvue Water Co.,* 7 Pa.Commonwealth Ct. 141, 298 A.2d 677 (1972).[13]

In summary, the jurisdictional provisions under the Water Rights Act and the MAA deal with differing issues and confer jurisdiction upon distinct tribunals with respect to these differing issues. The jurisdictional provisions are reconcilable, and the EHB properly exercised jurisdiction in this matter.[14]

---

7. We note that no review is sought by DER of the determination by the EHB that requiring the Authority to also install meters on the water supply lines as they exit the Authority's system is unreasonable.

8. Act of June 24, 1939, P.L. 842, 32 P.S. §§ 631–641.

9. In *Borough of Bellefonte v. Department of Environmental Resources,* 131 Pa.Commonwealth Ct. 312, 570 A.2d 129 (1990), *petition for allowance of appeal denied,* 525 Pa. 620, 577 A.2d 891 (1990), we determined that procedural matters relating to appeals under the Water Rights Act are governed by the rules of practice and procedure before the EHB. Implicit in this holding is that the EHB maintains subject matter jurisdiction of water allocation permit appeals.

10. It appears that the Authority has abandoned the lack of in personam jurisdiction issue and now merely asserts a challenge to subject matter jurisdiction.

11. Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §§ 301–401.

12. Section 4 B(h) provides in pertinent part:

Any person questioning the reasonableness or uniformity of any rate fixed by an Authority or the adequacy, safety and reasonableness of the Authority's service, including extensions thereof, may bring suit against the Authority in the court of common pleas....

13. Additionally, we note that the intent of the General Assembly in vesting exclusive jurisdiction for "rates and services" with the court of common pleas was to preclude such challenges from being heard by the Public Utility Commission. *See Elizabeth Township v. Municipal Authority of McKeesport,* 498 Pa. 476, 447 A.2d 245 (1982).

14. The Water Rights Act establishes an administrative hearing procedure for anyone who may be directly or adversely affected by a decision of the "board" under provisions of the Water Rights Act. The "board" referred to is the former Water Power Resources Board. The powers and duties of this "board" have subsequently been transferred to DER and the power to hold hear-

With regard to the EHB's imposition of Condition 3, the Authority contends that the plain language of the Water Rights Act prohibits the imposition of conditions in water allocation permits where there is no conflict with the rights of others to such water. Section 7 of the Water Rights Act provides, in pertinent part:

> In case of established conflict of interests, the board ... shall have the power to issue, modify or impose conditions in permits.... However, if the board finds that the proposed new source or additional supply will not conflict with the rights to such water or to water rights held by any other public water supply agency ... and that the water or the water rights proposed to be acquired are reasonably necessary for the present purposes and future needs of the public water supply agency ... the board shall approve the application and shall issue a permit therefor.

32 P.S. § 637.

Under this Section, the Authority contends that DER may place conditions on the issuance of a permit if, and only if, there is a conflict in the application for a water permit and the existing water rights of other users.

Herein, the EHB expressly found that PAWC has an inadequate water supply source which can barely provide enough water to meet all of its subsidiary water suppliers' needs during periods of drought. R.R. 151a. The EHB further found that the "Authority's use of water is potentially in conflict with rights to water held by other public water suppliers." *Id.* While the EHB did not state this conflict was "established", the very finding of a "conflict", potential or otherwise, dictates against the mandatory approval of the water allocation permit. Section 7 indicates that such mandatory approval applies only "if the board finds that the proposed new source or additional supply *will not conflict* with the rights to such water or to water rights held by any other public water supply agency...." (Emphasis added.) A finding of any "conflict" defeats application of the mandatory approval provision of Section 7.

On the basis of this section and the evidence presented, the EHB concluded that the Authority failed to sustain its burden of proving installation of interconnection flow monitoring meters required by DER was unreasonable. R.R. 171a. Based upon our review of the testimony, we agree. Imposition of Condition 3 was within the discretion of DER and was properly affirmed by the EHB.[15]

Accordingly, by having determined that the EHB had jurisdiction and that the Condition 3 requirement of installing meters on incoming water supply lines of the Authority's system was properly imposed, we affirm the order of the EHB.

### ORDER

AND NOW, this 2nd day of August, 1995, the November 4, 1994 order of the Environmental Hearing Board is affirmed.

---

ings and issue adjudications, previously vested in the "board", have subsequently become vested with the EHB. *See Philadelphia Suburban; Borough of Bellefonte.*

15. It has been established that courts are not to review actions of administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power. Neither will courts inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. Judicial discretion may not be substituted for administrative discretion. *Slawek v. State Board of Medical Education & Licensure,* 526 Pa. 316, 586 A.2d 362 (1991), quoting *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 572–73, 109 A.2d 331, 334–35 (1954), *appeal dismissed,* 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955). *See also Delker v. State Harness Racing Commission,* 139 Pa.Commonwealth Ct. 481, 590 A.2d 1360 (1991).